Mutasean ABUZANT, Tanya Abuzant and Lexington Fayette Urban County Human Rights Commission, Appellants,

v.

SHELTER INSURANCE COMPANY, Appellee.

No. 1997–CA–000594–MR.

Court of Appeals of Kentucky.

Sept. 11, 1998.

Edward E. Dove, Lexington, for appellants.

Cheryl U. Lewis, Lexington, for appellee.

Before ABRAMSON, BUCKINGHAM and COMBS, JJ.

ABRAMSON, Judge.

This appeal involves the refusal to issue automobile insurance coverage to an individual of Palestinian descent who is not a United States citizen and who contends the refusal constitutes discrimination on the basis of national origin proscribed by the Kentucky

Civil Rights Act, KRS 344.010 *et seq.*, and by the anti-discrimination section of the Kentucky Insurance Code, KRS 304.12–085. Appellants Mutasean and Tanya Abuzant ("the Abuzants") argue that the trial judge was without authority to disturb the decision of the Lexington–Fayette County Human Rights Commission ("Commission") that they had been discriminated against based on Mutasean's national origin. Having concluded that the issue presented is a question of law and that the trial court properly decided the issue in favor of Appellee Shelter Insurance Company ("Shelter"), we affirm.

The Abuzants initially applied for an automobile insurance policy with Shelter through its agent in Lexington, Kentucky, on January 8, 1991. At the time of application, Shelter had an underwriting guideline which required all policyholders to be citizens of the United States. The insurance application form contained a question concerning the citizenship of the applicant which Mutasean Abuzant completed reflecting his non-citizenship. He was denied coverage because he was not a United States citizen. On January 11, 1991, the Abuzants submitted a second application through a different Shelter agent, Charlotte Melton, located in Burkesville, Kentucky. The Abuzants did not complete the citizenship question and the application was forwarded to Shelter with a blank for the response to that question.

Although insurance coverage pursuant to this second application commenced on January 11, 1991, upon receipt of the application Shelter's underwriting department advised Melton that additional information was required regarding Mr. Abuzant's citizenship. After the underwriting department was informed that Mr. Abuzant was not a United States citizen, coverage was cancelled on the basis of Shelter's underwriting policy of insuring only United States citizens.

On March 27, 1991, Tanya Abuzant filed a complaint with the Commission charging that she had been denied insurance coverage by Shelter because her husband was not a citizen of the United States and that Shelter's refusal to sell Mr. Abuzant insurance coverage constituted discrimination on the basis of national origin. The charge was amended in

August 1991, to include Mr. Abuzant as a party. After the hearing officer assigned to the claim found no illegal discrimination, the Commission rejected the hearing officer's proposed findings and concluded that the denial of insurance coverage constituted an unlawful discriminatory practice based upon national origin.

Shelter then appealed the Commission's determination to the Fayette Circuit Court which, after analyzing the applicable statutes and caselaw, concluded that discrimination based upon national origin and discrimination based upon citizenship are distinct concepts and that while the former is prohibited, the latter is not. The Abuzants now argue in this forum: 1) that the trial judge had no authority to set aside the Commission's decision because it was supported by substantial evidence; and 2) that he erred in concluding that Shelter's refusal to provide insurance coverage on the basis of citizenship did not constitute illegal discrimination. We do not agree with either contention.

■ First, whether the refusal to issue an insurance policy to a non-citizen constitutes discrimination based on national origin is a question of law. Because the facts of this case are not in dispute, the trial court had unfettered discretion in reviewing the Commission's conclusion with respect to that legal issue. Indeed, this case falls squarely within the rule set out in *Epsilon Trading Co., Inc. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937, 940 (1989), that on undisputed facts, a board or commission's decision as to the interpretation and application of a statute is not subject to the substantial evidence rule:

It is well settled that a reviewing court may not substitute its judgment for that of an administrative board as a finder of fact. *Paramount Foods, Inc., v. Burkhardt*, Ky., 695 S.W.2d 418 (1985). However, the substantial evidence test pertains only to questions of fact, not to questions of law. *Brown v. Y.W.C.A.*, Ky.App., 729 S.W.2d 190 (1987).

An erroneous application of the law by an administrative board or by the circuit court is clearly reviewable by this Court. Also, where an administrative body has misapplied the legal effect of the facts,

courts are not bound to accept the legal conclusions of the administrative body.

We are therefore convinced that the trial judge acted within his authority in reviewing and setting aside the legal conclusion of the Commission.

■ Thus the crux of this appeal is the propriety of the trial judge's conclusion that denial of an insurance policy on the basis of citizenship does not violate the statutory prohibition against discrimination on the basis of national origin. Our consideration of the Abuzants' arguments necessarily focuses upon the statutory framework of Kentucky's anti-discrimination laws. KRS 344.020(1)(b) specifies that one purpose of the Kentucky Civil Rights Act is:

> To safeguard all individuals within the state from discrimination because of familial status, race, color, religion, *national origin*, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability as defined in KRS 344.010 and KRS 344.030; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest which would menace its democratic institutions, to preserve the public safety, health, and general welfare, and to further the interest, rights and privileges of individuals within the state;

(Emphasis added.) A more specifically applicable provision is set out in KRS 304.12–085:

> No person shall, whether acting for himself or another in connection with an insurance transaction, fail or refuse to issue or renew insurance to any person because of race, color, religion, *national origin*, or sex except that rates determined through valid actuarial tables shall not be violative of KRS Chapter 344.

(Emphasis added.) Finally, the Commission in its findings referenced Lexington–Fayette County Ordinance 190–83(now 166–92) which incorporates the state civil rights provision and also prohibits discrimination on the grounds of race, color, religion and national origin. As there is no Kentucky caselaw directly on point, we are guided by the experience of federal courts which have interpreted the phrase "national origin" in analogous contexts.

In *Espinoza v. Farah Manufacturing Company, Inc.*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), the United States Supreme Court examined the legislative history of the term "national origin" and concluded that it was not synonymous with "citizenship" for purposes of Title VII of the Civil Rights Act of 1964. The Supreme Court expressly held that nothing in that act made it illegal for an employer to discriminate on the basis of citizenship or alienage.

> Finally, petitioners seek to draw support from the fact that [Title] VII protects all individuals from unlawful discrimination, whether or not they are citizens of the United States. We agree that aliens are protected from discrimination under the Act.
>
> . . . .
>
> The question posed in the present case, however, is not whether aliens are protected from illegal discrimination under the Act, but what kinds of discrimination the Act makes illegal. Certainly it would be unlawful for an employer to discriminate against aliens because of race, color, religion, sex, or national origin—for example, by hiring aliens of Anglo–Saxon background but refusing to hire those of Mexican or Spanish ancestry. Aliens are protected from illegal discrimination under the Act, but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage.

414 U.S. at 95, 38 L.Ed.2d at 295.

While *Farah* dealt with discrimination against non-citizens in an employment context and has been widely cited in that area, several federal courts have noted its application in analogous situations: *Nguyen v. Montgomery Ward & Company*, 513 F.Supp. 1039 (N.D.Tex.1981)(denial of credit because of lack of United States citizenship did not constitute discrimination on basis of national origin); *Bhandari v. First Nat. Bank of Commerce*, 829 F.2d 1343 (5th Cir.1987)(denial of credit on basis of citizenship did not give rise to cause of action for private dis-

crimination under 42 U.S.C. § 1981); *Espinoza v. Hillwood Square Mut. Ass'n.,* 522 F.Supp. 559 (E.D.Va.1981) (discrimination on basis of citizenship not violative of Fair Housing Act).

The Abuzants rely upon *Duane v. GEICO,* 37 F.3d 1036 (4th Cir.1994) in which the court held that statutory language in 42 U.S.C. § 1981 prohibited discrimination against a resident alien in the purchase of homeowner's insurance. As Shelter points out, however, *Duane* does not address the United States Supreme Court decision in *Farah* nor does it discuss the distinction between national origin and citizenship. We concur in the trial judge's conclusion that the *Farah* rationale is applicable and provides the better-reasoned approach. As no legitimate basis for deviating from the *Farah* analysis has been demonstrated, we are persuaded that it provides the proper basis for resolving this case.

■ The trial judge specifically noted that while discrimination on the basis of citizenship was not actionable, if Shelter's underwriting guideline could be shown to effect a wider scheme of national origin discrimination, then its actions would constitute illegal discrimination under the statutes. However, nothing in the record indicates that Shelter engaged in a pattern of denying coverage to persons of Palestinian descent while providing coverage to persons of other national origin. There is thus no basis for concluding that Shelter's citizenship guideline was a pretext for a scheme of national origin discrimination. *Cf. Hillwood Square, supra,* 522 F.Supp. at 568.

■ Finally, the Abuzants argue that the trial judge erred: 1) in failing to hold Shelter's denial of coverage constituted "state action"; and 2) in failing to consider the "interplay" between "KRS 344 *et seq.,* an individual's state constitutional right to contract, and 42 U.S.C. § 1981." We are precluded from addressing these contentions, however, because the trial judge did not rule on these matters and the Abuzants made no request for specific findings on them. As noted by the Kentucky Supreme Court in *Crain v. Dean,* Ky., 741 S.W.2d 655, 658 (1987), such failure "constitutes a waiver and precludes appellate review. CR 52.04 and *Cherry v. Cherry,* Ky., 634 S.W.2d 423 (1982)."

The judgment of the Fayette Circuit Court is affirmed.

All concur.