Scotty BAESLER, Alice Baesler, Robert Woods, Judy Woods, and B–W Partnership, a Kentucky general partnership, Appellants,

v.

LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Lexington–Fayette Urban County Planning Commission; and Dr. Thomas Cooper, Chairman, Lyle Aten, Gene Ballestine, Ben Bransom, Ann Davis, Linda Godfrey, Sarah Gregg, Dallam M. Harper, Marty Howard, Keith Mays, Don Robinson, Ann Ross, Neill Day, Steve Kay, Lynn Roach–Phillips, Frank Penn, Randall Vaughan, and Joan Whitman, in their official capacity as members of the Lexington–Fayette Urban County Planning Commission, Appellees.

No. 2006–CA–001352–MR.

Court of Appeals of Kentucky.

Sept. 28, 2007.

Richard V. Murphy, Lexington, KY, for appellants.

Leslye M. Bowman, Andrea L. Weddle, Lexington, KY, for appellees.

Before DIXON and TAYLOR, Judges; GRAVES,[1] Senior Judge.

## OPINION

DIXON, Judge.

In this land use planning case, the Lexington–Fayette Urban County Planning Commission ("the Commission") denied an application to change the land use category for property owned by the Appellants, Scotty Baesler, Alice Baesler, Robert Woods, Judy Woods, and B–W Partnership (hereinafter "Baesler"). The Fayette Circuit Court affirmed the Commission's decision, and this appeal followed. We affirm.

This appeal concerns Baesler's application to amend Fayette County's comprehensive land management plan. Kentucky Revised Statutes (KRS) 100.183 mandates that the Commission "shall prepare a comprehensive plan, which shall serve as a guide for public and private actions and decisions to assure the development of public and private property in the most appropriate relationships." The comprehensive plan must address several specific statutory elements, and the Commission must review the plan at least once every five years. KRS 100.197. One statutory element, the "land use plan element," proposes the most desirable future use of public and private land. KRS 100.187(2). The Commission is also required to draft a "statement of goals and objectives" to serve as a guide for implementing the elements of the comprehensive plan. KRS 100.193. The "statement of goals and objectives" is then ratified by the Lexington–Fayette Urban County Council. *Id.*

Baesler owns approximately 280 acres of land in Fayette County, Kentucky. The tract borders land designated as the Blue Sky Rural Activity Center ("Blue Sky"). Fayette County's comprehensive plan has four rural activity centers, which are areas set aside for intensive special uses outside the county's urban center. Blue Sky is an industrial use area with manufacturing facilities, warehouse space, and office buildings. Since the Baesler property bordered Blue Sky, the 1996 comprehensive plan designated the Baesler property as a "buffer" because it separated the industrial park from rural agricultural land. When the Commission began reviewing the comprehensive plan for a 2001 update, Baesler applied for a change in the land use category for a 130–acre portion of his property. Baesler sought a change to "light industrial" land use, which would expand the boundary of Blue Sky to include his 130 acre tract.[2]

A public hearing was held March 15, 2001, where Baesler presented evidence and testimony in support of his application.

---

1. Senior Judge J. William Graves, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. We note here that Baesler's application sought an amendment to the comprehensive plan, rather than a formal zoning change.

Baesler's motivation for amending the land use category was to increase the likelihood a future zone change request would be approved. He argues only 7% of zoning amendments are approved where the change does not agree with the comprehensive plan's land use category.

The Commission also heard the testimony from concerned citizens at the conclusion of the hearing. The Commission ultimately denied Baesler's application 7–to–3.

Baesler appealed to Fayette Circuit Court pursuant to KRS 100.347(2), alleging denial of procedural due process and that the Commission's action was not supported by substantial evidence. On April 26, 2004, the court found the Commission had violated Baesler's procedural due process rights by failing to render findings of fact supporting its decision to deny the application. The court remanded the case to the Commission to consider the record and issue findings of fact.

On June 24, 2004, the Commission addressed Baesler's application on remand. After a brief discussion among members, the Commission voted to deny Baesler's request 9–to–2. The Commission adopted five findings of fact which supported denying the application. Baesler again appealed to the circuit court, raising the same arguments as in his earlier appeal. On August 25, 2005, the court affirmed the Commission's decision. This appeal followed.

 Judicial review of an administrative decision is concerned with whether the action of the agency was arbitrary. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Three grounds exist for finding that an agency's decision was arbitrary: (1) the agency acted in excess of its statutory powers, (2) the agency did not afford procedural due process, and (3) the agency's decision was not supported by substantial evidence. *Id.*

 Baesler first argues the Commission's decision was not supported by substantial evidence. He specifically points to the Commission's findings regarding the availability of sewer facilities and the impact on agricultural land.

We first address the issue of sewer facilities. The Commission's findings stated:

According to a report by the Kentucky Department of Environmental Protection Division of Water, the Blue Sky Rural Activity Center is served by the Blue Sky Wastewater Treatment Plant, a substandard facility that has been the subject of significant compliance problems, including legal sanctions, notices of violations, and lawsuits for many years. The facility was originally built in 1968 to process domestic waste, but processes only industrial waste. The plant has no pre-treatment capacity so industrial waste passes through untreated and interferes with biological processes. The effluent is a severe problem because it is highly toxic with high concentrations of certain chemicals, including ammonia and phosphorus and there is no monitoring of a variety of heavy metals which pass through down the watershed. An unnamed tributary of Baughman Creek and Baughman Creek are determined to be not supporting of life. The primary cause is the discharge from this Blue Sky water treatment facility which has had and continues to have severe KPDES permit violations. The Commission finds that it would be inappropriate and contrary to judicious planning to expand Blue Sky Rural Activity Center because the uncontradicted evidence shows that the Blue Sky water treatment facility is substandard and continues to pollute the watershed.

Baesler challenges the sufficiency of the evidence supporting this finding. Baesler contends the Commission solely relied on an outdated report from the Natural Resources and Environmental Protection Cabinet describing the insufficiency of the Blue Sky Wastewater Treatment Plant

("Blue Sky Plant"). At the hearing, Baesler introduced a letter from the Commonwealth of Kentucky Division of Water which advised that the Blue Sky Plant was attempting to comply with state and federal laws to improve its facility. However, the letter also cautioned that no additional tap-ons to the facility would be considered until the plant was in compliance with all regulations for a full year. The Commission also heard a presentation from the long range planning manager of the Urban County Government, Bob Joice. Joice addressed numerous issues for the Commission to consider, and he specifically pointed out the inadequacies of the Blue Sky Plant. Additionally, the Commission heard from citizens who disapproved the expansion of Blue Sky. Several citizens noted the area suffered environmental pollution caused by industrial runoff and the substandard sewage treatment plant.

We first note that, " 'substantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998). Furthermore, "[t]he administrative agency's findings will be upheld even though there exists evidence to the contrary in the record." *Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578–79 (Ky.2002). Here, our review of the record leaves no doubt that the Commission's findings regarding the sewer facilities were based on substantial evidence. Although Baesler opines his evidence contradicts the Commission's finding, there was ample evidence supporting the Commission's decision. As such, the findings of the Commission are conclusive. *Id.*

Baesler alternatively argues the Commission improperly cited the lack of sewer facilities as a basis for its decision. Baesler points to *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky.1960), wherein the Court determined a planning commission had no authority to consider the availability of sewer facilities when considering a zone change classification. However, we find *Pierson Trapp, supra*, distinguishable.

First, *Pierson Trapp* addressed a zoning change, *id.*, while the issue in the case at bar is a proposed amendment to Fayette County's comprehensive plan. Furthermore, the *Pierson Trapp* Court considered a request by landowners to build a shopping center. *Id.* Here, the Commission considered a request to create 130 acres of industrial space, which would necessarily include industrial waste and runoff. As such, we are not persuaded that *Pierson Trapp, supra*, precluded the Commission from considering sewer facilities in its denial of Baesler's application. We also note, the goals and objectives of the comprehensive plan mandated consideration of sewer facilities. Goal 8, Objective C stated:

> Limit Rural Activity Centers to the existing boundaries except for consideration as a part of the Comprehensive Plan or a Small Area Plan process and upon consideration of issues outlined in the Rural Land Management Plan, including land needs, traffic, adequacy of sewers and other pertinent factors.

Accordingly, we find that the Commission properly considered sewer facilities in its decision.

Baesler next takes issue with the Commission's findings regarding the adverse impact on agricultural land. The Commission found:

> The Rural Land Management Plan designates this 130–acre property for buffer uses which allows 10–acre residential lots. The category is intended to buffer agricultural areas from urban areas. Expanding Blue Sky Rural Activity Cen-

ter to include this property would negatively impact agricultural properties in the area, the rural historic community of Athens and the Boone Creek national Historic District [...] because if the property [is] subsequently developed for industrial uses it would increase surface water runoff, traffic hazards, water and light pollution and would alter the visual and aesthetic character of the rural area.

Baesler contends the Commission's findings were not supported by substantial evidence and that the Commission failed to conduct legitimate deliberations at the hearing on remand. Baesler argues the geography of the area refutes the finding that agricultural land would suffer. Baesler further opines that the remaining 150 acres in his parcel would continue as a "buffer" between industrial uses and agricultural land.

At the hearing, Bob Joice, the long range planning manager, addressed the potential degradation of agricultural land if the "buffer" zones were decreased. Joice advised that, while the comprehensive plan's goals and objectives did not preclude expanding Blue Sky, the overall intention of the Rural Land Management Plan was not to expand any of the rural activity centers.

After thoroughly reviewing the record, it is clear the Commission's decision was supported by substantial evidence. Although Baesler presented evidence showing his proposal complied with the comprehensive plan, the Commission also heard evidence showing the negative impact of expanding Blue Sky. It was within the sole province of the Commission to assess "the credibility of the witnesses and the weight of the evidence." *Energy Regulatory Comm'n v. Kentucky Power Co.*, 605 S.W.2d 46 (Ky.App.1980). Because substantial evidence supported the Commis-

sion's action, it was not arbitrary. Likewise, we find no error in the deliberation process at the June 24, 2004, hearing on remand.

Baesler next argues his procedural due process rights were violated when Lexington–Fayette Urban County Councilwoman Gloria Martin testified at the March 15, 2001, hearing. At the time of the hearing, Martin represented the council district that encompassed Blue Sky and the Baesler property. Martin advised the Commission that her district opposed expanding the boundaries of Blue Sky. She also encouraged the Commission to strictly interpret the comprehensive plan and consider the overall impact of expansion.

Baesler contends that Martin's testimony was improper and unduly influenced the Commission's decision. Baesler points out that members of the Commission are appointed by the mayor with final approval vested in the Urban County Council. In support of his argument, Baesler cites one case from our jurisprudence which held that a conflict of interest exists where a person is simultaneously a member of both a city council and a city planning commission. *LaGrange City Council v. Hall Bros. Co. of Oldham County, Inc.*, 3 S.W.3d 765, 771 (Ky.App.1999). However, in the case at bar, Martin was not in a position "to exercise decision-making authority in one capacity and then review the same matter in another capacity." *Id.* Martin appeared at the meeting to voice concern about several proposals which directly impacted her council district. A review of her testimony does not reveal any impropriety or abuse of her position as a Councilwoman.

We are persuaded by the reasoning in *Hougham v. Lexington–Fayette Urban County Gov't*, 29 S.W.3d 370 (Ky.App. 1999). In that case, a panel of this Court addressed allegations that two council

members improperly engaged in *ex parte* communications with constituents before voting on a zone change amendment. *Id.* at 373. The Court found the communications did not taint "the decision making process so as to make it unfair to the parties or contrary to the public interest." *Id.* at 374. Here, there is no evidence of impropriety by Martin which could have tainted the Commission's decision. Likewise, we are reminded that "members of council do not live in a vacuum nor are they required to." *Id.* Accordingly, we find Baesler's procedural due process rights were not infringed, as he received notice, hearing, and an opportunity to present evidence and offer rebuttal. *Id.* at 373.

In his final argument, Baesler contends his right to equal protection of the law was violated when the Commission granted a neighboring landowner's application for a land use change. However, the trial court did not rule on this issue, and Baesler failed to request specific findings. Consequently, it is not preserved for our review. *Abuzant v. Shelter Ins. Co.,* 977 S.W.2d 259, 262 (Ky.App.1998); CR 52.04.

For the reasons stated herein, the order of the Fayette Circuit Court is affirmed.

GRAVES, Senior Judge, concurs.

TAYLOR, Judge, concurs in result only.