COMMONWEALTH of Kentucky, ENERGY AND ENVIRONMENT CABINET, Formerly Environmental and Public Protection Cabinet, Appellant,

v.

Vernon SPURLOCK, d/b/a Vernon Spurlock; and War Eagle Coal Company, Appellees.

Nos. 2008–CA–001184–MR, 2008–CA–001275–MR.

Court of Appeals of Kentucky.

Jan. 22, 2010.

As Modified on Denial of Rehearing March 26, 2010.

Maria T. Geisler, Stephen C. Boyd, Frankfort, KY, for appellant.

Donald Duff, Frankfort, KY, for appellee.

Before CAPERTON, THOMPSON, and WINE, Judges.

## OPINION

THOMPSON, Judge.

The Commonwealth of Kentucky, Energy and Environment Cabinet (formerly Environmental and Public Protection Cabinet), appeals from two orders of the Clay Circuit Court declaring the Cabinet's final orders entered against Vernon Spurlock d/b/a Vernon Spurlock void based on its interpretation of the Kentucky Supreme Court's decision in *Commonwealth of Kentucky, Natural Resources and Environ-* *mental Protection Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718 (Ky.2005). We conclude that the trial court was incorrect in its application of the law and reverse and remand.

Pursuant to KRS 350 *et seq.*, the Cabinet inspected Spurlock's property located in Clay County and determined that he violated the provisions of KRS Chapter 350 *et seq.*, and its related regulations. As a result, the Cabinet issued two noncompliance orders and two cessation orders. After Spurlock was notified of the orders and failed to respond, the Cabinet issued proposed assessment orders assessing civil penalties of $100,104 and $52,200.

The notices of assessment were preprinted forms and advised Spurlock to choose one of three options:

- I choose not to contest the amount of the proposed assessment and I understand that an appropriate final Order in conformity with 405 KAR 7:092, Section 3(4) will be entered.

- I request an assessment conference to contest the proposed assessment. I am requesting the assessment conference on behalf of

_____

Name of Business Entity (please print)

- I waive my right to an assessment conference. Attached is a petition for an administrative hearing and a cashier's check, certified check, or money order in the amount of the proposed assessment for payment into the escrow account as required under 405 KAR 7:092, Section 6.

Spurlock was further instructed:

If you fail to respond within thirty (30) days of receipt of this notice, the Secretary of the Environmental and Public Protection Cabinet will enter an

appropriate final order in conformity with 405 KAR 7:092, Section 3(4).

Neither notice advised Spurlock of his right to seek a waiver of the prepayment of the proposed penalties.[1] After Spurlock failed to respond, the Cabinet issued two final orders on June 30, 2005, finding that Spurlock failed to request an administrative hearing as advised in the notices of assessment and, therefore, waived all rights to administrative hearings. As a consequence, the violations cited in the noncompliance orders were deemed admitted and the civil penalties imposed. Spurlock was further ordered to perform all remedial measures required in the noncompliance and cessation orders.

On July 25, 2005, Spurlock filed two petitions for "Review and Appeal", each seeking to have the Cabinet's orders set aside on the basis that in *Kentec*, the Kentucky Supreme Court declared the prepayment provision in KRS 350.0301(5) and 405 KAR 7:092, Section 6 unconstitutional.[2] Subsequently, he filed motions for summary judgment and, in support, filed affidavits stating that he could not file a petition for an administrative hearing because he had insufficient resources to pay the amount of the penalties imposed. The Cabinet responded and moved to strike Spurlock's affidavit because it was not included in the administrative record. KRS 350.032(2). Finally, it argued that Spurlock failed to request an assessment conference or a formal hearing prior to filing his petitions in the circuit court and, therefore, waived any right to challenge the Cabinet's orders.

The circuit court concluded that in *Kentec*, the Kentucky Supreme Court nullified the prepayment provisions in KRS 350.0301(5) and 405 KAR 7:092, Section 6 and, therefore, Spurlock was not required to request hearings before the Cabinet. Ultimately, the circuit court held that the orders were void and set aside the orders.

The circuit court utilized a *de novo* standard of review because there was no administrative hearing to provide a basis for factual findings and the facts underlying the Cabinet's orders. Our initial inquiry is whether the circuit court utilized the proper standard of review.

■■■ The purpose of judicial review of an appeal from an administrative agency is to ensure that the agency did not act arbitrarily. *Baesler v. Lexington–Fayette Urban County Government*, 237 S.W.3d 209 (Ky.App.2007). If the Court concludes that the agency applied the correct rule of law to the facts supported by substantial evidence, the final order of the agency must be affirmed. *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406 (Ky.App.1994).

We conclude that the trial court correctly framed the standard of review as *de novo*. The issues presented require only that we resolve whether the Cabinet properly applied the law. Although we conclude that the circuit court's application of *Kentec* was misguided, on other grounds, we remand the case to the Cabinet with directions that Spurlock be permitted to file a request for a formal hearing.

Although the circuit court relied exclusively on the *Kentec* decision, a thorough understanding of the effect of that decision requires an analysis of the Supreme Court's prior decision in *Franklin v. Natural Resources and Environmental Protection Cabinet*, 799 S.W.2d 1 (Ky.1990), and

---

1. In 2006, the Cabinet amended its Notice of Proposed Assessment to state that the prepayment of the proposed assessment is no longer required.

2. The Attorney General was notified pursuant to KRS 418.075 but declined to intervene.

the statutory and regulatory changes made in response to that decision.

*Franklin* involved four cases in which the Cabinet issued notices of noncompliance and orders for remedial measures. Two of the mining companies filed applications for a formal hearing that were unaccompanied by the required payment of the assessed penalties. The remaining two companies did not file applications for formal hearing, as neither party had sufficient funds to pay the assessed penalty levied by the preliminary hearing officer.

Our Supreme Court was requested to subject 405 KAR 7:092 to constitutional scrutiny. At the time of the Court's decision, the procedures available provided for an informal hearing at which no records were kept and the only recourses available, if fines and penalties were imposed by the hearing officer, were to prepay the assessment and request a formal hearing within thirty days.

The Court concluded that the regulation requiring prepayment of the assessed penalty prior to the grant of a formal hearing was void. Crucial to the Court's analysis was that the enabling statutes did not authorize the Cabinet to impose a prepayment of penalties as a condition precedent to a formal hearing. *Id.* at 3. Interpreting existing statutory law, the Court pointed out that:

> KRS 350.028(2) provides that the Cabinet has the power to conduct hearings under Chapter 224, which, in turn, provides in KRS 224.081 and KRS 224.083 that, whenever the Cabinet has reason to believe that a violation has occurred, it shall serve a written notice upon the violator and hold a hearing thereon. The statutes state that the hearing shall be one at which the party may be represented by counsel, may make oral or written arguments, offer testimony, cross-examine, issue subpoenas, etc. Of additional note is that KRS 224.083 provides that a record shall be kept of such hearing and made available. Under the regulation herein, the preliminary hearing does not follow the statute and the only way in which a formal hearing may be obtained is by the prepayment of the penalties and fines, which procedure is not mentioned or authorized by the statute.

*Id.*

The court explained that the statutes and regulations pertaining to surface mining were adopted pursuant to the Federal Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.*, which provides the miner with a formal hearing, a full record, and attendant due process rights and, further, an appeal to an administrative law judge and appeal to the federal court system. Because similar proceedings were not provided by the Kentucky regulations, the Court held that Kentucky's regulations were more stringent than federal law and regulations and, consequently, the prepayment provision of 405 KAR 7:092 unenforceable. *Id.* at 3.

*Kentec* followed legislative changes to Chapter 350 and those to the Cabinet's regulations in response to *Franklin.* The same statutes and regulations were in effect when the Cabinet issued the orders against Spurlock.

In *Kentec,* challenges were made to the newly revised versions of KRS 350.0301(5) and 405 KAR 7:092. The *post-Franklin* statute authorizes the Cabinet to promulgate regulations for the placement of proposed civil penalty assessments into an escrow account prior to a formal hearing in the amount of the assessment. However, it also states that the regulations shall "provide for a waiver of the placement of the proposed civil penalties into escrow for those individuals who demonstrate with

substantial evidence an inability to pay the proposed civil penalties into escrow." KRS 350.0301(5).

Pursuant to the amended version of the statute, the Cabinet promulgated 405 KAR 7:092, Section 3 of which sets forth the requirements for a proposed penalty assessment and the options available following the issuance of a "Notice of Proposed Assessment." Section 4 provides for an informal assessment conference and does not require prepayment of the assessed penalty; however, identical to the preliminary hearing procedure *pre-Franklin*, no record is created from which an appeal may be taken. Section 6 outlines the procedure that must be followed to obtain a formal hearing to challenge the proposed assessment and requires prepayment of the assessment or, if an assessment conference has been held, prepayment of the penalty recommended by the conference officer. However, and presumably in direct response to *Franklin*, Section 15 allows individuals to prove their inability to prepay the proposed assessment and to obtain a waiver from the prepayment requirement.

KENTEC, a corporation, filed a request for an informal assessment conference but failed to attend the hearing. As a result, the conference officer recommended to the Secretary that the assessment be upheld and advised KENTEC that it could request a formal hearing accompanied by full payment of the assessment.

KENTEC filed a "Petition for Hearing" in which it alleged that it did not have sufficient funds to prepay the proposed assessment. The Cabinet dismissed the petition because the prepayment was not attached and, therefore, affirmed the penalty. Central to the Cabinet's conclusion was that KRS 350.0301(5) permitted only individuals, not corporations, to obtain a waiver of the penalty prepayment.

As in *Franklin*, the Supreme Court considered the constitutionality of the prepayment provisions in the Cabinet's regulations. Because of the statutory amendments, including the prepayment requirement in KRS 350.0301(5), the Court also considered the exclusion of corporations from the waiver provision. Ultimately, the Court held that the statute, and 405 KAR 7:092, Section 6, were unconstitutional to the extent that corporations could not request a waiver of the prepayment requirement. The Court concluded that the distinction between an individual and a corporation violated the equal protection clause of the United States and Kentucky Constitutions and the denial of access to a formal hearing based on the inability to pay was unreasonable and arbitrary in violation of Section 2 of the Kentucky Constitution. *Id.* at 727. Reaffirming its position in *Franklin*, the Court explained that a due process hearing cannot be denied based on the inability to pay.

KENTEC, which plead "its inability to make the prepayment," is deprived of a right to a due process hearing, while the hearing is secured to a corporation that can afford it, and even an indigent individual who has the means of securing a waiver. Like the Court of Appeals before us, we too have been unable "to discern any rational basis or legitimate state interest to explain—much less to justify—the arbitrary singling out of a corporation for such disparate treatment."

*Id.* at 725 (footnote omitted).

The Court held that KRS 350.0301(5) and 405 KAR 7:092, Section 6, were unconstitutional as applied to KENTEC because corporations were excluded from the waiver provisions, while individuals were granted the right to seek relief from prepayment. In reliance on *Kentec*, Spurlock

successfully persuaded the circuit court that the Cabinet's orders were void. For the reasons stated below, we disagree that *Kentec* resolved the disposition of the case.

The fallacy in the circuit court's reasoning is attributable to its failure to recognize the factual distinctions between *Kentec* and the present case. As pointed out by the Cabinet, Spurlock is an individual to whom the statutes and regulations explicitly grant the right to seek a waiver from the prepayment provision. The assessments of civil penalties against Spurlock were not premised on his inability to prepay the assessment penalties, rather the Cabinet's orders were based upon Spurlock's failure to respond to its orders.

In view of the factual distinctions, the Cabinet urges this Court to apply the Supreme Court's decision in *Natural Resources and Environmental Protection Cabinet v. Cricket Coal Co., Inc.,* 780 S.W.2d 609 (1989), and this Court's decision in *Griffie v. Natural Resources and Environmental Protection Cabinet,* 817 S.W.2d 897 (Ky.App.1991). We are unconvinced that either case establishes precedent for the situation presented.

In *Cricket Coal Company, Inc.,* despite receiving notification, the coal operator failed to attend a preliminary hearing. The Cabinet issued a final judgment finding that the coal operator committed the violations and imposed a fine. The Supreme Court held the failure to attend the preliminary hearing fatal to the coal company's subsequent appeals. It pointed out that 405 KAR 7:092, in effect at the time of the violations, provided that the failure to attend the preliminary hearing without good cause waived all rights to contest the fact of the violation or the proposed penalty. Additionally, the Court relied on KRS 350.032 which provided that "[n]o objection to the order may be considered by the court unless it was urged before the Cabi-

net or there were reasonable grounds for failure to do so."

The Court held that the coal operator could not simply disregard the proceeding before the Cabinet and seek judicial review of the Cabinet's order. The Court emphasized that the Cabinet's regulations "clearly provide for entry of a default order. . . . The failure to appear at the preliminary hearing and the failure to request a formal hearing are deemed to be an admission of the violations charged and an acceptance of the proposed penalty." *Id.* at 611.

After *Franklin,* this Court rendered its decision in *Griffie v. Natural Resources and Environmental Protection Cabinet,* 817 S.W.2d 897 (Ky.App.1991), wherein it addressed the impact of *Franklin* on the Supreme Court's holding in *Cricket* that attendance at the preliminary hearing was a prerequisite to contest the fact of the violation or the proposed penalty. This Court rejected the appellants' broad interpretation of *Franklin* and held that *Franklin* only invalidated the Cabinet's regulatory scheme to the extent that it required prepayment of fines as a prerequisite to a formal hearing. It reasoned:

> Griffie and Daniel would have us believe that all cases where the cabinet failed, for whatever reason, to hold a formal hearing, were somehow rendered void by virtue of *Franklin.* Appellants are reading too much into *Franklin,* which invalidated only so much of the cabinet's regulatory scheme as required prepayment of fines as a prerequisite to the granting of a formal hearing. Significantly, the Supreme Court did not see fit to overrule or even discuss *Cricket,* nor did it consider or discuss the regulations concerning attendance at informal hearings. Thus, we must conclude that

the Supreme Court intended to maintain the viability of its holding in *Cricket*. *Id.* at 898.

■ Neither the legislature nor the Supreme Court has modified or removed the default provisions from the Cabinet's proceedings. KRS 350.032 continues to require that all issues be presented to the Cabinet and the Cabinet's regulations continue to contain default provisions. *See* 405 KAR 7:092. As in *Franklin*, in *Kentec*, the Supreme Court did not address its decision in *Cricket* and left unaltered the requirement that all hearing requirements be satisfied prior to filing for judicial relief. Our dilemma in Spurlock's case is that the Cabinet misinformed him regarding his rights.

The Supreme Court held in *Franklin* that the Cabinet's prepayment provisions imposed prior to the granting of a formal hearing were unauthorized by statute and unconstitutional. Despite the legislative and administrative changes and in complete disregard of the dictate of our Supreme Court, the form notice provided by the Cabinet advised Spurlock that he was not entitled to an administrative hearing absent prepayment of the proposed penalty. Thus, there was no difference in the options available to Spurlock than those given under the *pre-Franklin* statutes and regulations. Through its order, the Cabinet imposed upon Spurlock the identical provisions held unconstitutional in *Franklin* and *Kentec*.

■ "Administrative agencies are bound by the procedural dictates of the statutes and are not empowered to adopt regulations in conflict with plain statutory provisions." *Natural Resources & Environmental Protection Cabinet v. Pinnacle Coal Corp.*, 729 S.W.2d 438, 439 (Ky.1987). It is logical that an agency is likewise without authority to issue an order in direct contradiction of our statutes and judi-cial decisions. This is particularly true where, as here, the agency misinformed a citizen regarding a constitutional right to which he is entitled.

Based on the foregoing, the opinion and orders of the Clay Circuit Court are reversed and the case remanded to the Cabinet with directions that Spurlock be granted the opportunity to request a formal hearing.

ALL CONCUR.