RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1225-MR

MAC SAWYERS                                                          APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 19-CI-007889


LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT OFFICES
OF PLANNING & DESIGN
SERVICES; DEVELOP LOUISVILLE;
AND LOUISVILLE JEFFERSON
COUNTY METRO GOVERNMENT
BOARD OF ZONING ADJUSTMENTS                                         APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Mac Sawyer[1] has appealed from the opinion and order of

the Jefferson Circuit Court upholding a decision of the Louisville Metro Board of

---

[1] The appellant's last name is listed as Sawyer or Sawyers throughout the record, including the notice of appeal, where it is listed as Sawyer in the caption and Sawyers in the body. We shall refer to him as Sawyer in this Opinion as that is the version used in his appellate brief.

Zoning Adjustment (the Board) affirming the denial of Sawyer's application to declare his nonresidential use of property on National Turnpike as a legal, nonconforming use due to a lack of continuous use since 1943. Because we hold that the Board's decision was arbitrary and that the circuit court erred in affirming, we reverse and remand.

In May 2019, Sawyer filed a Nonconforming Rights Application with the Louisville Metro Planning & Design Services regarding the use of his property at 9705 National Turnpike in Louisville, Kentucky, which was zoned residential. He described his nonconforming use as follows:

> The use is commercial/industrial property used to store house and building moving equipment, including, but not limited to, backhoes, trucks, trailers, cribbing, timber, pipes and other related equipment stored over the entire lot, storage of general contracting equipment, including, but not limited to, construction supplies, heavy equipment, tools, machines, etc., storage and dispatch of carpet cleaning vans and carpet cleaning equipment. In the front portion and garage there are jacks, jacking machines, blacksmith supplies, and [a] blacksmith shop.

Included with his application were affidavits, maps, permits, and photos of equipment storage, job sites, workers, transport, completed jobs, blacksmith work, and steel and equipment handling "showing that the property has been used as commercial/industrial property since the 1930s." He claimed these documents established that the property never stopped being used commercially.

Sawyer attached his own affidavit, outlining his use and ownership of the property since the 1970s, including his interactions with the Metro Government employees, as well as the use by prior owners. He also included a chronology of prior owners back to 1933 and witnesses who remembered that "maybe as early as 1937" a business buying and selling steel had been operated at the property, along with supporting affidavits.

The record contains e-mail communications from and between city planners. Associate planner Nia Holt sent an e-mail on May 24, 2019, as follows:

> The applicant is requesting commercial uses (carpet cleaning, blacksmith shop, & house moving businesses [storage yard and contractor shop written onto printed out message]) and the equipment storage associated with the commercial uses in the R-4 zoning district. The property is located outside of the original city and the applicant was required to provide evidence going back to 1943. PVA list the property as single-family residence. Zoning maps from the 40s list the subject property as zoning class "A – One Family District." Later zoning maps from the 1960s and 1990s list the property as R-4. The Directories show a listing of the business or the property owner listed in the deeds provided from 2000, 1998, 1993, 1991, 1985, 1975, 1972, 1971, and 1963. The aerial maps from [sic] do not show outdoor storage until the 1980s.
>
> The applicant states in the application that he has lived and work[ed] out of this property for over 40 years (see attached timeline). He rented from the previous owner before he bought the house and all the businesses on the property (see attached affidavit). Affidavits from neighboring property owners state that the property has been used both as a residence and a business since the

-3-

late '30s/early 40s. The applicant has provided pictures
from dating back to the 1960s of the various businesses
that have been based on the property and its workers.
There are also records (invoices, tax forms, work orders,
etc.) of the business going back to the 1970s. I have
attached the summary of the documents. I have the entire
binder in my office if you would like to see in the
information.

And on June 6, 2019, Ms. Holt sent an e-mail to Sawyer:

We have reviewed the materials submitted for this case.
We cannot identify a specific use that can be consistently
dated back nor conclusive evidence to support
nonconforming rights to 1943. The team of senior
planners have determined that this case cannot be
approved at staff level and you will need to appeal to the
Board of Zoning Adjustment (BOZA). The first step is
to tell us the exact land use or uses from the Louisville
Metro Land Development Code (LDC) you are
requesting nonconforming rights for so we can respond
to that use(s) request in our letter response. This way
you will have already identified the uses you are
appealing BOZA for. If you are requesting more than
one use in your appeal you must submit a plan that shows
where on the property each land use is located. I have
attached the appropriate section of the LDC and the
appeal application for your convenience.

On August 9, 2019, Chris French, a Planning & Design Supervisor,

sent a letter to Sawyer providing him with notice that he had not established the

nonconforming use rights for a blacksmith and contractor's shop with a storage

yard for 9705 National Turnpike. Pursuant to Kentucky Revised Statutes (KRS)

100.257, Sawyer appealed to the Board. In his appeal, Sawyer maintained that he

had conclusively proven the requisite commercial and industrial use of his property

since the 1930s. Further, alleging that an employee of the agency, April Robbins, had previously determined that the property was nonconforming, Sawyer argued the agency should not be permitted to arbitrarily reach a contrary result.

Prior to the public hearing, a Staff Report was completed, which included a summary of the case, an analysis of the issues, and a conclusion:

### STAFF ANALYSIS/FINDINGS

. . . .

The Appellant provided extensive documentation related to his ownership and use of the property for non-residential activities related to uses that fit the M-2 zoning category under a blacksmith, contractor's shop, and storage yard. However, affidavits from some neighboring property owners, nearby business owners, and relatives of previous owners is the only information that was provided for the time period prior to the 1960s. Staff looked at the files within the Office of Planning and Design Services and could not find any information regarding the use of the property as a blacksmith, contractor's shop, or storage yard. Staff looked at an aerial photograph from the [sic] 1946 (Attachment 3) which does not show the storage of equipment, vehicles, or materials on the property as discussed in the affidavits. Without information to corroborate the affidavits staff cannot determine that the use existed on the property since 1943.

In the Appellant[']s basis of appeal, he lists information identified as zoning enforcement notes from previous zoning enforcement officers, which the Appellant is using to state that he had nonconforming rights; however, staff could not find documentation that the property was formally granted nonconforming rights. The former

-5-

zoning enforcement officers listed may not have had the authority to grant nonconforming rights.

In addition, the Appellant asserts that he can satisfy that the use existed since the 1960s, but a requirement to go back to 1943 is a very high bar and that the affidavits submitted by individuals for the period preceding the 1960s should be sufficient to grant nonconforming rights.

**Staff Conclusions**

Staff did not have sufficient information in the review of the nonconforming rights case that the nonresidential use existed on the property in 1943. The Appellant has not submitted additional information to change staff's previous conclusion. Therefore, staff believes that the original decision was correct, and the property does not have established nonconforming rights for a blacksmith, contractor's shop, and storage yard.

The report listed the two questions the Board had to determine as: 1) "Did the nonresidential use (blacksmith, contractor's shop, and storage yard) exist on the property in 1943?" and 2) "If yes to question 1, did this use of the property continue to the present day?"

The Board held a public hearing on November 18, 2019, where Sawyer appeared with his counsel, who called witnesses and set forth arguments that the evidence supported a finding that the nonconforming use had been continuous since prior to 1943. In rebuttal, French discussed that Sawyer's property had always been zoned residential. There had been proposed zoning as a part of a study that showed the property could be zoned commercial/industrial, but

an area-wide rezoning had never happened. French said that a staff supervisor had reached out to April Robbins. She did not have any recollection of writing a letter granting nonconforming rights. At the conclusion of the hearing, the Board Chair found that the nonconforming use has existed prior to 1943. However, she did not conclude that it was continuous:

> Based on testimony I heard today, the present use did not continue to the present day because various people sold the property. No one gave us existing evidence as to how long the property was vacant or remained unused. So I'll say the use was not continuous to the present day.

The minutes reflect that the Board found that the non-residential use (blacksmith, contractor's shop, and storage yard) may have existed on the property in 1943 but that the use of the property did not continue to the present day. Therefore, the Board upheld the administrative decision and denied Sawyer's appeal.

Sawyer filed a complaint with the Jefferson Circuit Court in December 2019 against the Board and Louisville-Jefferson County Metro Government, Office of Planning and Design Services Develop Louisville, (collectively, the Metro Defendants or appellees) to appeal the Board's November 18, 2019, decision pursuant to KRS 100.347(1).

In his brief, Sawyer detailed the history of the property and the evidence in the administrative record establishing the continuity of its use as commercial/industrial. He discussed his 2007 interaction with Metro Government

-7-

Inspector April Robbins, including the November 2007 letter and her notes in the log. Sawyer argued that the Metro Defendants erred because they applied the wrong standard of review in concluding an absence of nonconforming rights pursuant to either KRS 100.253(1) or (3). The Board members failed to conduct a careful review of the evidence due to the late receipt of the lengthy file and failed to make sufficient factual findings regarding the lack of continuity of nonconforming use. He argued that the court could not conduct a non-speculative review of the Board's decision absent more information about when the Board thought the use was non-continuous, when it ceased, and the evidence supporting the conclusion. Sawyer urged the court to vacate the decision and remand with instructions to better explain its decision or grant his application. Sawyer argued that the decision was arbitrary as being against the weight of the substantial evidence. In their responsive brief, the Metro Defendants argued that the Board's decision complied with due process and was supported by substantial evidence.

The circuit court heard arguments from the parties in July[2] and entered an opinion and order on September 19, 2022, affirming the Board's decision. The court held that the Board's decision was based on substantial evidence and therefore was not arbitrary, noting that the Board was "free to weigh the evidence as it chooses within the bounds of due process and applicable law. The affidavits

---

[2] The video recording of the July 14, 2022, oral arguments is not in the certified record.

-8-

presented by Mr. Sawyer were given less weight by the Board because they were from neighbors who gave general conclusions based on passing observations or information obtained from relatives." It also found no issue with the Board's adoption of and reliance on the Staff Report, holding that it was appropriate for the Board to incorporate the report into its findings of fact. This appeal now follows.

On appeal, Sawyer raises several issues related to the propriety of the Board's decision, including whether it was based upon substantial evidence, whether his due process rights were violated, whether the Board should only have considered whether there was continuous use since 2008, and whether the doctrines of *res judicata*, collateral estoppel, detrimental reliance, or laches should apply.

The Metro Defendants (now the appellees) contend that Sawyer failed to preserve for our review his arguments related to continuous use since 2008 and the application of various doctrines. We agree. While Sawyer alleged that he had "reasonably relied" upon April Robbins' determination that his use was a legal, nonconforming use, he did not raise this issue, or any of these other arguments, in his brief before the circuit court. Therefore, these arguments have not been preserved for our review.

> "The appellate court reviews for errors, and a nonruling
> is not reviewable when the issue has not been presented
> to the trial court for decision." *Turner v. Commonwealth*,
> 460 S.W.2d 345, 346 (Ky. 1970); *see also Hatton v.*

*Commonwealth*, 409 S.W.2d 818, 819-20 (Ky. 1966). "[I]t is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised here for the first time." *Hutchings v. Louisville Trust Co.*, 276 S.W.2d 461, 466 (Ky. 1955); *Benefit Ass'n of Ry. Employees v. Secrest*, 239 Ky. 400, 39 S.W.2d 682, 687 (1931). "The underlying principle of the rule is to afford an opportunity to the trial court, before or during the trial or hearing, to rule upon the question raised." *Hartsock v. Commonwealth*, 382 S.W.2d 861, 864 (Ky. 1964).

Because this allegation of error was not properly presented or preserved in the trial court, it cannot serve as the basis of reversal on appeal.

*Jones v. Livesay*, 551 S.W.3d 47, 52-53 (Ky. App. 2018). We also agree with the appellees that Sawyer failed to comply with Kentucky Rules of Appellate Procedure (RAP) 32(A)(4) by including a statement at the beginning of each argument referencing whether and how each issue was preserved. Accordingly, we shall not consider these arguments.

We shall now review the remaining arguments Sawyer has raised. Our proper standard of review is set forth in *Baesler v. Lexington-Fayette Urban County Government*, 237 S.W.3d 209 (Ky. App. 2007), as follows:

Judicial review of an administrative decision is concerned with whether the action of the agency was arbitrary. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Three grounds exist for finding that an agency's decision was arbitrary: (1) the agency acted in excess of its statutory powers, (2) the agency did not afford procedural due process, and (3) the

-10-

agency's decision was not supported by substantial evidence. *Id.*

*Baesler*, 237 S.W.3d at 212.

We shall first consider whether Sawyer's due process rights were violated.

> Procedural due process is required in proceedings before a zoning board. *Morris v. City of Catlettsburg*, Ky., 437 S.W.2d 753 (1969). The requisite procedural elements are a hearing, the taking and weighing of evidence, a finding of fact based upon an evaluation of the evidence and conclusions supported by substantial evidence. [*City of Louisville v. McDonald*, 470 S.W.2d 173, 177 (Ky. 1971)]. Proceedings before a Board of Zoning Adjustment were held to be a denial of procedural due process where there was no real hearing, no taking of evidence and no finding of fact. *Morris*, *supra*. A trial-type hearing is automatically required for disputes of *adjudicative facts* (as opposed to *legislative facts*).
>
> It is beyond cavil that a hearing held for the purpose of granting and denying a zone change is of an adjudicatory nature. *McDonald*, *supra*.

*Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982).

In this argument, Sawyer contends that the Board members could not have reviewed the more than 550 pages submitted prior to the hearing as these documents were received shortly before the hearing and were only viewable on their cell phones. But as the appellees point out, the vast majority of these documents had been sent to the Board members prior to the date of the hearing. The only additional documents sent the day of the hearing totaled about 11 pages,

-11-

which included notes and correspondence from Ms. Robbins.[3]  We find no infringement of Sawyer's due process rights, as he was permitted to be heard, presented evidence and testimony at the hearing, cross-examined opposing witnesses, and the Board Chair provided her reasoning, albeit brief, for the denial of the application.

Next, we shall consider whether the circuit court properly determined that the Board based its decision to deny the application on substantial evidence.

> We first note that, "'substantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). Furthermore, "[t]he administrative agency's findings will be upheld even though there exists evidence to the contrary in the record." *Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578-79 (Ky. 2002).

*Baesler*, 237 S.W.3d at 213.  And in *Ball v. Oldham County Planning and Zoning Commission*, 375 S.W.3d 79 (Ky. App. 2012), this Court provided additional guidance:

> In weighing the substantiality of the evidence supporting an administrative decision, "a reviewing court must hold fast to the guiding principle that the trier of facts is afforded great latitude in its evaluation of the

---

[3] The record contains a November 18, 2019, email from attorney Nicholson to French informing him that two attachments were missing from the statement of appeal – the Zoning and Inspection Case Notes (11 pages) and Ms. Robbins' November 16, 2007, letter to Laura Bailey (Sawyer's girlfriend who lived with him).

evidence heard and the credibility of witnesses appearing before it." *Bowling v. Natural Res. & Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409-10 (Ky. App. 1994). Thus, "although a reviewing court may arrive at a different conclusion than the trier of fact in its consideration of the evidence in the record, this does not necessarily deprive the agency's decision of support by substantial evidence." *Id*. at 410. Moreover, on determinations of fact "[t]he administrative agency's findings will be upheld even though there exists evidence to the contrary in the record." *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578 (Ky. 2002). Ultimately, this Court cannot substitute its judgment on a factual issue "unless the agency's decision is arbitrary and capricious." *McManus v. Kentucky Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003); *see also Stout v. Jenkins*, 268 S.W.2d 643, 645 (Ky. 1954).

*Ball*, 375 S.W.3d at 86.

In KRS 100.253, the General Assembly set forth the basis to establish a legal, nonconforming use, and that statute provides, in relevant part, that:

(1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.

(2) The board of adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted, nor shall the board permit a change from one (1) nonconforming use to another unless the new nonconforming use is in the same or a more restrictive classification[.]

-13-

Louisville and Jefferson County's master plan for zoning was adopted in 1943, s*ee Louisville and Jefferson County Air Board v. Porter*, 397 S.W.2d 146, 147 (Ky. 1965), meaning that to establish a legal, nonconforming use, an applicant must prove that the use had been in existence and continuous since 1943.

In the present case, the Board agreed with Sawyer that the nonconforming use as a blacksmith, contractor's shop, and storage yard had been in existence since 1943. However, it disagreed that Sawyer had established that this use had been continuous since that time because there was no evidence that the use continued during the transfers in ownership. Sawyer argues that neither the Board nor the circuit court considered whether the nonconforming use had been abandoned for more than 12 months as set forth in the application and that the Board had not identified a specific period of nonuse in its findings. He asserts that there was no evidence that any prior owner had abandoned the nonconforming use.

In support of this argument, Sawyer cites to *Martin v. Beehan*, 689 S.W.2d 29 (Ky. App. 1985), to assert that there was no evidence that any prior owner had abandoned the nonconforming use for more than 12 months. While *Martin* addressed the discontinuation period in Covington's zoning code, not Louisville's, we note that the Nonconforming Rights Application contains a section asking whether "[t]he use existed continuously on the property since the time it became nonconforming, without an interruption of more than twelve (12)

-14-

consecutive months." Sawyer states there was no evidence of any specific period when the property's use as a commercial entity had been discontinued. Sawyer also cites to *City of Bowling Green v. Miller*, 335 S.W.2d 893, 894 (Ky. 1960), in which the former Court of Appeals held that,

> [T]he "established use" of property referred to in the ordinance is not limited to the actual activities on the day of its enactment. It is well recognized that a temporary vacancy or non-user of the premises without evidence of an intention to abandon the non-conforming use does not extinguish it.

The Court concluded that a nine-month vacancy did not terminate the building's established commercial use. *Id.* Here, Sawyer asserts that it was enough that he provided affidavits that established a continuous commercial use dating back to prior to 1943 and that a single aerial photograph was not enough to prove that the property had been abandoned for a period of more than 12 months.

The appellees argue that *Martin* and *Miller* are distinguishable from the present case because they address abandonment and a temporary vacancy rather than whether a continuous use existed. They urge this Court to consider the unreported decision in *Louisville Metro Board of Zoning Adjustment v. A-1 Sanitation*, No. 2007-CA-000484-MR, 2008 WL 399642, at *3 (Ky. App. Feb. 15, 2008), as it relates to the use of affidavits to establish continuous use:

> The use of the property between 1953 and 1962 was addressed only by the Halls' affidavit statements that they knew the property had been "used continuously for

-15-

industrial purposes as long as [they could] remember, certainly at least from the mid-1940's[,]" and by the BOZA staff report which stated that no information was found to show how the property was used before 1962. Even if the Halls' statements could be found to indicate that, from the mid-1940's forward, they were specifically aware of the alleged industrial use of the particular tract of property which they later purchased, rather than simply aware of the general use of property in that vicinity, no substantial evidence was adduced to show and compare the nature of the alleged industrial uses of the property before and after the 1953 rezoning. Thus, there was no showing that any nonconforming use of the property after 1953 was not an enlargement of the property's prior use. KRS 100.253. Further, even if there was a permissible nonconforming use of the property between 1953 and 1962, no substantial evidence was adduced to show that the property's nonconforming use after 1962 was not an enlargement or extension of any prior permissible nonconforming use. KRS 100.253(2). Hence, appellees failed to meet their burden of providing substantial evidence to show that there was a continuous nonconforming use of the property after 1953, and that they were entitled to continue such nonconforming use in accordance with the limitations of KRS 100.253.

We are persuaded by Sawyer's argument that there is not substantial evidence in the record to support the Board's finding that the use was not continuous. We reach this decision based upon the way the Board answered the two questions posed to it at the hearing. The Board answered "yes" to the question as to whether the nonresidential use dated back to prior to 1943 when Louisville's zoning master plan was adopted. It then went on to answer "no" to the second question as to whether this commercial use was continuous from that time. We

agree with Sawyer that the 1946 photo filed with the Staff Report, which appears to show that nothing was being stored on the property at that time, was not enough to establish that the use had been discontinued for an adequate period of time to deem the use as having been abandoned.

In addition, two affidavits from Larry Kettler from 2007 and 2019 establish that the commercial use was continuous when the property was transferred to each new owner. Mr. Kettler stated that James Gibson used the property to store steel and equipment from the early 1940s until the mid-1950s when he sold the business to Alex Shepherd. Mr. Shepherd continued operating the business in the same manner. In 1956, Joe Masterson purchased the business and the property, and he did blacksmith work, worked with steel, and operated a retail shop. He also rented space to Herman Slaughter, who had been using the back acreage to store steel, trucks, and equipment. In 1970, Sawyer purchased the house moving business from Mr. Slaughter and later purchased the property from Harold Taylor,[4] who had been running a carpet cleaning company from the property.

The Staff Report relied upon the 1946 aerial photograph to support the assertion that the nonconforming use had not existed in 1943. However, the Board disagreed with this assertion in answering "yes" to the first question as to whether

_____

[4] Sawyer stated that Masterson sold the property to Taylor in 1973.

a nonconforming use dated back to 1943.  This photo, without another one to compare it to, cannot establish that the nonconforming use had stopped for any period of time sufficient to constitute an abandonment.  We note that in *A-1 Sanitation*, *supra*, the affidavits at issue were from the property owners.  Here, Sawyer submitted affidavits from neighbors and did not rely solely upon his own sworn testimony.  While the Board was certainly able to weigh the evidence as it chose, there was not substantial evidence in the record to support its finding that the nonconforming use had not been continuous.  Mr. Kettler's affidavits, as well as other affidavits filed in the record, certainly established continuous use.  Had the Board found that the nonconforming use did not exist prior to 1943, the result would be different.  Accordingly, we must hold that the Board's denial of Sawyer's application was arbitrary and that the circuit court erred in affirming that decision.

For the foregoing reasons, the Jefferson Circuit Court's September 19, 2022, opinion is reversed, and this matter is remanded for further proceedings in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Alan S. Rubin
Louisville, Kentucky

BRIEF FOR APPELLEES:

Michael J. O'Connell
Jefferson County Attorney

Laura M. Ferguson
Travis J. Fiechter
Assistant Jefferson County Attorneys
Louisville, Kentucky